NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1563                                    Appeals Court

KRISTEN SULLIVAN, administratrix,[1] & another[2]  vs.  THOMAS
CONNOLLY & another.[3]

No. 15-P-1563.

Suffolk.     December 14, 2016. - February 17, 2017.

Present:  Grainger, Sullivan, & Kinder, JJ.

Negligence, Medical malpractice, Wrongful death, Spoliation of
     evidence.  Wrongful Death.  Minor, Wrongful death.
     Practice, Civil, Wrongful death, Instructions to jury,
     Opening statement, New trial, Bias of judge.

Civil action commenced in the Superior Court Department on
March 18, 2010.

The case was tried before Linda E. Giles, J., and a motion
for new trial was considered by her.

Benjamin R. Novotny for the plaintiffs.
Brooks L. Glahn for the defendants.

---

[1] Of the estate of Conleigh Sullivan.

[2] Glen Sullivan, coadministrator of the estate of Conleigh
Sullivan.

[3] Debbie Jellyman.

GRAINGER, J.  A jury in the Superior Court returned a defendants' verdict in this medical malpractice suit and wrongful death action resulting from the death of an infant within three days of birth.  The plaintiffs appeal, asserting claims of error in the judge's evidentiary rulings, in her instructions to the jury and, in a more disturbing allegation, accusing the judge of persistent favoritism and biased conduct requiring a new trial.

After a careful review of both the record appendix and the trial transcript in their entirety, we affirm the judgment.  Moreover, for the reasons set forth below, we conclude that the allegations of judicial bias in the plaintiffs' motion for a new trial are unfounded, and that they exemplify pleading material appropriate for a motion to strike as set forth in Mass.R.Civ.P. 12(f), 365 Mass. 754 (1974).

We address the plaintiffs' claims in the order briefed on appeal, noting that the claims of error are intertwined with the assertion of judicial bias.  We refer to the factual assertions of the parties as they relate to the issues; the underlying facts are generally undisputed.

Missing witness instruction.  1.  Adverse inference.  A central issue at trial related to fetal heart rate tracings. These tracings are electronically monitored to ensure that a fetus maintains a minimally healthy heart rate before and during

delivery. The plaintiffs asserted that the defendants were negligent by failing to monitor the decedent's tracings with appropriate care, failing to recognize that the tracings signaled an unacceptably slow (nonreassuring) heart rate and, consequently, failing to perform an urgently required cesarean section in a timely manner. The defendants asserted that the tracings indicated a reassuring heart rate, and that a cesarean section was performed at the appropriate point in time during delivery when the mother's dilation failed to progress beyond nine centimeters.

The original contemporaneous paper records of the fetal heart rate tracings were unable to be found. While copies of the tracings were available and introduced in evidence, these did not contain any handwritten notations that the defendants might have made on the original paper strips. Chart notations made during delivery and at the time that the cesarean section was initiated supported the defendants' position that the cesarean section was performed because the mother's labor had failed to progress beyond nine centimeters' dilation.

However, chart notations entered later, by postdelivery care providers, referred to nonreassuring fetal heart rate tracings as the reason for the cesarean section. The defendants argued that these postdelivery notations either were made on the basis of unfounded assumptions derived by reasoning in reverse,

i.e., assuming that the tracings were nonreassuring because the infant was born in an essentially lifeless state, or were, at least in part, the result of parroting previous entries based on such unfounded assumptions.

The plaintiffs introduced the later chart notations by postdelivery providers in presenting their case, but did not call as witnesses any of the postdelivery providers who had made the notations. The defendants' motion for a missing witness instruction was denied. See Mass. G. Evid. § 1111 (2016). The plaintiffs, however, assert on appeal that the judge committed error in allowing the defendants to argue to the jury that the plaintiffs presented no evidence that any postdelivery care providers who recorded chart notations of nonreassuring tracings had actually examined the records of heart tracings made at the time of delivery.

The defendants were fully entitled to direct the jury's attention to the fact that the entry of the notations in question was susceptible to more than one interpretation, and to argue that the inference urged by the plaintiffs was not the only explanation for their existence. The judge did not abuse her discretion; her denial of the defendants' request for a missing witness instruction was appropriately balanced by her allowance of the argument. See <u>Bouley</u> v. <u>Reisman</u>, 38 Mass. App.

Ct. 118, 121-122 (1995).  There was no error, and no favoritism shown either party.

2.  <u>Curative instructions</u>.  The plaintiffs' opening statement informed the jury that the fetal heart monitor tracings were missing, and that the two defendants were the last people known to have had possession of them.[4]  The judge interpreted this as a thinly veiled reference to spoliation and instructed the jury to disregard any mention of allegedly missing original fetal monitor tracings.[5]

The plaintiff argues that the remarks made in their opening statement were factually accurate and that the delivery of a curative instruction both after the plaintiffs rested and at the close of all the evidence constituted prejudicial error.  We disagree.

The judge was entitled to guard against deleterious inferences unsupported by evidence, and her doing so demonstrates no bias.  See <u>Rolanti</u> v. <u>Boston Edison Corp</u>., 33 Mass. App. Ct. 516, 529 (1992).  There was evidence in the record that the defendants reviewed the monitor tracing records;

---

[4] Counsel stated:  "[T]hose original fetal monitor tracings are missing.  <u>The last people we know that had them</u> are the two defendants in this case.  <u>They're nowhere to be found</u>." (Emphasis supplied.)

[5] The judge specifically warned the jury:  "If you inferred from that claim by Mr. Novotny of any wrongdoing with regard to the original fetal monitor tracings by either Nurse Jellyman or Dr. Connolly, you are to disregard it."

the record, including deposition testimony relied upon by the plaintiffs, is simply silent with respect to any subsequent possession or review of the original records by additional persons. The plaintiffs did not seek to call the defendants as hostile witnesses to inquire on the issue of spoliation, or any other issue, during the presentation of their case. There is no evidence in the record to support the assertion that the defendants were the last individuals to have had possession of the records, and no evidence from which an inference of spoliation, or even carelessness, could properly be inferred. The fact that the defendants produced copies of the records, from which both parties and their experts were free to argue the signification of the viability of the fetus during delivery, further supports the judge's precautionary instruction and refutes charges of bias. There was no error.

Jury charge. The plaintiffs contend that the judge's instructions to the jury did not properly describe the elements of a wrongful death claim. Specifically, the plaintiffs assert the judge instructed the jury that a duty of care was owed only to the mother, rather than also to the infant.

The record contradicts the plaintiffs' claim. The plaintiffs fail to mention the following portion of the charge: "The first element the plaintiffs must prove by a preponderance of the evidence is the standard of medical care that was owed to

the decedent by the defendant" (emphasis supplied).  The judge
also made it clear that a finding that the defendants failed to
provide the proper standard of care to the mother must be found
to be causally related to the infant's death:  "whether that
negligence caused the decedent's death."

   Motion for a new trial.  A motion for a new trial is within
the trial judge's discretion; "special deference" is accorded
the "motion judge who was also the trial judge." Commonwealth
v. Grace, 397 Mass. 303, 307 (1986).  The plaintiffs do not
argue that the evidence was insufficient to support the verdict.
As stated, the motion is based solely on the assertion that the
judge's bias and favoritism created prejudice requiring a new
trial.

   A review of the trial transcript provides no support
whatsoever for the conclusion that the judge demonstrated bias,
and reveals no prejudice visited upon the plaintiffs' case.  The
plaintiffs complain that the judge admonished trial counsel for
repetitive and protracted questioning.  This was done at sidebar
and without the jury's knowledge.[6]

---

[6] Aside from the fact that the jury were not exposed to the
judge's entirely appropriate efforts to promote an efficient use
of the courtroom, and aside from the fact that most experienced
trial counsel have been admonished by a judge at some point in
their careers, we view the remarks in question as helpful
criticism rather than prejudicial.  The judge cautioned against
insulting "their [the jury's] intelligence" and added, "Unless
you want this jury to blame you and only you for this case not

The plaintiffs complain that the judge's bias operated to allow the defendants to provide expert testimony at trial that had not been previously disclosed. This assertion refers in part to testimony by the defendants themselves. The plaintiffs and their counsel were unfairly surprised neither by the fact that the individuals who were sued for medical malpractice took the stand, nor that they testified to the adequacy of their own standard of care. We perceive no prejudice.

The plaintiffs also characterize the testimony of a percipient witness, Nurse Jim Mooney, as undisclosed expert testimony. Nurse Mooney was not an undisclosed witness; he was noted on the hospital records produced in discovery as the resource nurse in charge on the labor floor, and in attendance at the delivery of the plaintiffs' child. Compare Commonwealth v. Durning, 406 Mass. 485, 496-497 (1990) (disclosure of witness testifying two to three hours before testimony). The plaintiffs did not object to his testifying when he took the stand and noted that "[w]e let him in as a percipient witness." The plaintiffs objected twice during Nurse Mooney's entire testimony, asserting on both occasions that a question to the witness solicited inadmissible opinion. The judge sustained one objection and overruled the other. Our review of the record

getting to them until probably next week . . . . Just take it as a word of advice."

reveals a balanced approach by the judge. She allowed testimony relating to the witness's perceptions and beliefs during the delivery, while excluding testimony about the hospital's ability to vary the procedure followed in this case.[7] Neither party was favored by her careful and appropriate distinctions.

The plaintiffs also claim that a difference of opinion between their counsel and the judge whether the law entitled the plaintiffs to peremptory challenges equal in number to those allowed the defendants was indicative of the judge's bias. The claim fails for the obvious reason that, notwithstanding her view of the law, the judge provided the plaintiffs with the number to which they claimed a right.[8] Another example of the fallaciousness of the plaintiffs' assertion of favoritism is their complaint that the judge was critical of plaintiffs' counsel's performance during a colloquy at which she denied the defendants' motion for a mistrial to the plaintiffs' benefit.

In addition to complaining about the judge's substantive rulings, the motion for a new trial accuses the judge of displaying "collusion" with defendants' counsel, having "snickered, sneered, [and] delivered unfair and unbalanced

---

[7] The judge allowed the witness to state, "I did not think she needed an emergency C-section," but excluded testimony about the hospital's ability to continue monitoring fetal tracings after a patient had been sterilized and prepped for delivery.

[8] The defendants agreed with the judge's legal position, but acquiesced in the resolution of the issue.

rulings," berating the plaintiffs' attorney and subjecting him to "unequal treatment." Conspicuously absent from the record are any sworn statements from either of the plaintiffs' trial attorneys. On the other hand, defendant's counsel filed an affidavit stating that, although she was present throughout the trial, she did not see the judge "engage in any of the behavior described in the plaintiffs' affidavit," noting however that one of the plaintiffs had to be discreetly admonished during trial to refrain from the very kind of conduct now attributed by plaintiffs to the judge.

The plaintiffs' claims invoke the principle of a fair trial, and we do not take such claims lightly. We have examined the entire trial transcript and record appendix in detail. At our request, plaintiffs have cited every record reference on which they rely. In addition to the determinations set forth above, we note that a review of these citations shows that without exception they are taken from sidebar conferences or motion hearings; none are in proceedings before the jury.[9] For

---

[9] Finally, we note that the judge instructed the jury: "You should not consider anything that I have said or done during the trial, in ruling on motions or objections, in comments to the attorneys, in questions to witnesses setting forth the law or in setting forth the law in these instructions, as any indication of my opinion as to how you should decide the case. If you believe that I've expressed or hinted at any opinion about the facts of this case, please disregard it. Determining the facts and what the verdict ought to be is solely and exclusively your duty and responsibility."

the reasons set forth in this opinion, and those set forth in yet additional detail in the judge's thorough memorandum of decision denying the plaintiffs' motion for a new trial, we discern no basis to impugn the judge's conduct, and no error in her findings.

<u>Judgment affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.